**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

**LEVI LOVE,**

      **Petitioner,**

      **v.**                                                                 **CASE NO.  22-3276-JWL**

**DAN SCHNURR, Warden,**
**Hutchinson Correctional Facility,**

      **Respondent.**

**MEMORANDUM AND ORDER**

This matter is a petition for writ of habeas corpus filed under 28 U.S.C. § 2241. Petitioner is in state custody at the Hutchinson Correctional Facility in Hutchinson, Kansas. The Court granted Petitioner leave to proceed in forma pauperis. Petitioner challenges the calculation of his state sentence. Respondent has filed an Answer and Return (Docs. 21, 22), and Petitioner has filed a Traverse (Doc. 27). Petitioner has also filed a Motion for Evidentiary Hearing (Doc. 28). The Court denies the Petition, finding that Petitioner has failed to demonstrate cause and actual prejudice excusing his procedural default. The Court also finds that Petitioner fails to allege facts establishing that he is in custody in violation of the Constitution or laws or treaties of the United States.

**I.  Procedural History**

The procedural history of Petitioner's underlying state criminal case, as found by this Court in its decision denying Petitioner's § 2254 petition, is as follows:

> A Shawnee County, Kansas jury convicted petitioner of first degree murder and attempted first degree murder on November 5, 1997. The court sentenced petitioner to concurrent terms of 816 months and life imprisonment. After petitioner appealed, the Kansas Court of Appeals affirmed his convictions. On direct appeal, petitioner raised the following issues: (1) the court should

have suppressed certain identification evidence; (2) the evidence was insufficient to support the convictions; and (3) the admission of hearsay evidence violated his right to confrontation.

The Kansas Supreme Court affirmed petitioner's convictions. Petitioner then filed for post-conviction relief pursuant to K.S.A. § 60–1507 in the District Court of Shawnee County on December 16, 1999. In that petition, his counsel raised the following issues: (1) newly-discovered evidence warranted a new trial; and (2) his trial and appellate counsel were ineffective. Petitioner then filed a *pro se* "new-revised" § 60–1507 motion addressing sixteen additional issues. After the district court denied his § 60–1507 petition, petitioner appealed. He also filed a Motion to Correct Illegal Sentence, which was denied by the district court in April 2003. On September 12, 2003, the Kansas Court of Appeals affirmed the district court's § 60–1507 decision, and the Kansas Supreme Court denied the subsequent petition for review on December 23, 2003. The Kansas Supreme Court affirmed the denial of petitioner's Motion to Correct Illegal Sentence on December 9, 2005. On December 22, 2005, petitioner filed the instant request for relief pursuant to 28 U.S.C. § 2254.

*Love v. Roberts*, Case No. 05-3481, 2007 WL 2013573 at *1 (D. Kan. 2007), *reh'g denied* 2007 WL 3353706 (D. Kan. 2007), *certificate of appealability denied* 259 F. App'x 58 (10th Cir. Dec. 6, 2007), *cert. denied* 552 U.S. 1271 (2008), *reh'g denied* 553 U.S. 1077 (2008).

On October 22, 2018, Petitioner filed a motion for habeas corpus pursuant to K.S.A. 60-1501 in the District Court of Reno County, Kansas. *Love v. Schnurr*, Case No. 2018-CV-352 (Reno County District Court). His petition alleged that the Kansas Department of Corrections ("KDOC") had improperly denied his grievance, which contended that the KDOC illegally changed his controlling sentence from life imprisonment to 816 months. *Love v. Schnurr*, Case No. 121,774, 481 P.3d 193 (Table), 2021 WL 745418, at *1 (Kan. Ct. App. 2021).

On January 16, 2019, the district court denied Petitioner's motion, finding that it was untimely filed. *Love v. Schnurr*, Case No. 2018-CV-352. Petitioner appealed, and on February 26, 2021, the Kansas Court of Appeals ("KCA") affirmed the denial of Petitioner's

K.S.A. 60-1501 motion, on the basis that his motion was filed in the district court beyond the expiration of the jurisdictional time limit.  *Love v. Schnurr,* 2021 WL 745418, at *5.  A petition for review was denied by the Kansas Supreme Court on March 31, 2022, and a motion to recall the mandate was denied on June 13, 2022.  *See Love v. Schnurr*, Case No. 121,774 (Kansas Court of Appeals Docket).

Petitioner then filed the present petition for habeas corpus relief under 28 U.S.C. § 2241 on October 25, 2022, challenging the calculation of his state sentence.

## II.  Facts

The facts of Petitioner's case were recounted by the KCA in Petitioner's appeal from the denial of his K.S.A. 60-1501 motion as follows:

> In 1997, Love was sentenced for two crimes. On one count he got life imprisonment with the possibility of parole after 25 years; on the other he received 816 months' imprisonment. The court ordered the sentences to run concurrently. Love believes that his life sentence is controlling and that after 25 years he should be eligible for release from prison. However, he asserts that State officials illegally changed his sentence to make the 816-month sentence controlling, thus depriving him of the possibility of parole after 25 years. Love informally raised the issue with prison officials in 2014 and again in October 2017 but did not file a formal grievance until July 2018. When his grievance was denied, Love filed a K.S.A. 60-1501 petition in October 2018.
>
> Although the issues that Love raised in his petition relate to the sentences he received in 1997, he did not include the original journal entry of judgment detailing what those crimes were and how he was sentenced. It appears that he was convicted of murder and attempted murder. These convictions were affirmed by the Kansas Supreme Court in *State v. Love*, 267 Kan. 600, 986 P.2d 358 (1999). Love did include a portion of the transcript from his sentencing hearing in the record where the district court sentenced him to "life on Count 1 and 816 months on Count 2, concurrent." The sentencing judge also stated that Love would have to serve 25 years of the life sentence before he was eligible for parole. Love's sentence for the 1997 case was ordered to run consecutive to a

prior sentence. See *Love v. State*, 280 Kan. 553, 124 P.3d 32 (2005).

The general argument in Love's petition is that State officials illegally changed his controlling sentence from the life sentence to the 816-month sentence. He noted that when sentences run concurrently, the longer sentence controls. Consequently, Love argues that because life imprisonment is longer than 816 months, the life sentence should control and he should be eligible for parole and release from prison in 2022. As the basis for his grievance and habeas corpus petition, Love alleges that KDOC officials illegally changed his sentence by making the 816-month sentence controlling.

The obvious flaw in Love's basic contention is that parole at the end of 25 years of prison service on his life sentence, or indeed at any time during Love's lifetime, is entirely discretionary with the Kansas Prisoner Review Board (the paroling authority) and might never be granted. See K.S.A. 2019 Supp. 22-3717(g). And, even if Love was paroled on his life sentence, he would not be released until he had served a total of 816 months (68 years) on his other concurrent sentence with a possible reduction of time through earning good time credits. See K.S.A. 2019 Supp. 21-6821. Likewise, if Love were somehow to complete serving his 816-month sentence, but had never been granted discretionary parole on his life sentence, he still could not leave prison. So, whatever KDOC lists as Love's controlling sentence appears, on its face, to be of academic interest only and not based on the clear requirements of Kansas sentencing law.

But Love's K.S.A. 60-1501 petition, the district court's decision, Love's subsequent appeal, and the briefs of the parties all revolve exclusively upon whether KDOC properly dealt with his grievance. Therefore, we will confine our decision solely to that issue.

Although the record is unclear as to when KDOC changed Love's controlling sentence from life imprisonment to 816 months in its records, it appears Love was aware of it as early as 2014 because he submitted several Form 9s (Inmate Request to Staff Member forms) raising the issue. Love argues that his sentence must be corrected because the State violated his constitutional rights when it eliminated his chance of being released after serving 25 years of his sentence. Love attached assorted documents to his petition showing that at times his life sentence was listed as controlling and at others the 816-month sentence was listed as controlling.

Sometime in October 2017, Love filed additional Form 9s raising the issue. At some point Love wrote to Warden Dan Schnurr, who replied in a letter dated October 5, 2017. Warden Schnurr informed Love that his sentences run concurrently and therefore the sentence that causes Love to serve the longest term controls. The letter stated that it would "serve as a final response on the subject."

Love did not take further action until July 9, 2018, when he filed another Form 9. In it, he stated that he had only just received the October 5, 2017 letter from Warden Schnurr. The response from Unit Team Supervisor Lamb was that Warden Schnurr's response was provided to Love on October 5, 2017, the issue had been reviewed multiple times by multiple staff members, and Warden Schnurr's response was final.

Love filed a formal grievance July 27, 2018. In this grievance, Love said that he had up to a year to grieve Warden Schnurr's final response. Unit Team Supervisor Lamb denied the grievance, explaining that Love's 816-month sentence controlled because it was significantly longer than the 25-year sentence. Love appealed to Warden Schnurr, who denied the grievance on August 23, 2018. Warden Schnurr said that this was his final answer to Love on the matter, and any subsequent grievances would be returned to Love with no further response. Love appealed this to the Secretary of Corrections on August 27, 2018. He was denied again in a response dated September 4, 2018. The response was mailed to Love on September 7, 2018, and provided to him on September 14, 2018. Love filed his K.S.A. 60-1501 petition on October 11, 2018.

The district court summarily dismissed Love's petition. The court held that the final order in this case was Warden Schnurr's October 5, 2017 letter and that Love had to appeal from that order within 30 days. Because Love failed to do so, his petition was untimely. In regard to Love's grievance filed in the fall of 2018, the district court held that Love was not permitted to start another 30-day appeal period by writing a new grievance.

*Love v. Schnurr*, Case No. 121,774, 481 P.3d 193 (Table), 2021 WL 745418, at *1–2 (Kan. Ct. App. 2021) (unpublished opinion).

The KCA affirmed the dismissal of the 60-1501 petition, finding that Petitioner failed to demonstrate that his attempts to exhaust his administrative remedies were timely as required by

K.S.A. 60-1501(b). *Id*. at *4. The KCA found that although it was unclear when the allegedly erroneous KDOC decision regarding the controlling sentence occurred, "it is clear that Love was aware of it by 2014, meaning that it must have occurred before then." *Id*. The KCA held that "[t]o comply with KDOC regulations, Love had 15 days after the date of the discovery of the event giving rise to the grievance to file a grievance" and "he did not file a grievance until almost a year later." *Id*. at *4–5.

## II. Discussion

### 1. Request for Evidentiary Hearing

Petitioner has filed a Motion for an Evidentiary Hearing (Doc. 28), referencing his prior motion seeking the same. The Court previously denied Petitioner's request for an evidentiary hearing. (Doc. 5.) The Court found that:

> To the extent Petitioner seeks an evidentiary hearing, the request is denied. The Court, in its discretion, may apply the Rules Governing Habeas Corpus Cases, foll. 28 U.S.C. § 2254, to habeas petitions filed under § 2241. *See* Rule 1(b), Rules Governing Habeas Corpus Cases. Rule 8 provides that "[i]f the petition is not dismissed, the judge must review the answer, any transcripts and records of state-court proceedings, and any materials submitted under Rule 7 to determine whether an evidentiary hearing is warranted." "District courts are not required to hold evidentiary hearings in collateral attacks without a firm idea of what the testimony will encompass and how it will support a movant's claim." *Pittman v. Fox*, 766 F. App'x 705, 723 (10th Cir. 2019) (quoting *United States v. Cervini*, 379 F.3d 987, 994 (10th Cir. 2004)).
>
> Petitioner seeks an evidentiary hearing, but fails to address what testimony would support his claim. The Court denies the request for an immediate evidentiary hearing. The Court finds that an evidentiary hearing is not warranted at this time.

*Id.* at 1–2.  Petitioner filed a second motion for an evidentiary hearing (Doc. 8), and the Court denied the motion again, indicating the Court would order an evidentiary hearing if it determines a hearing is necessary after reviewing the answer and traverse.  (Doc. 11, at 2.)

The Court denied the previous motions for an evidentiary hearing without prejudice, indicating that the Court would order an evidentiary hearing if it determines a hearing is necessary after reviewing the answer and traverse.  The Court has reviewed the answer and traverse and finds that an evidentiary hearing is not warranted.

### 2.  Standard of Review

To obtain habeas corpus relief, an inmate must demonstrate that "[h]e is in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S. C. § 2241(c)(3).

### 3.  Analysis

#### A.  Procedural Default

Petitioner raises the same claim that he raised in his state § 60-1501 petition.  The Kansas Court of Appeals found that Petitioner's claim was procedurally defaulted due to his failure to timely exhaust his administrative remedies as required by K.S.A. § 60-1501(b) and K.S.A. 75-52,138 (requiring inmates to exhaust administrative remedies before filing a civil action against State officials).  *Love v. Schnurr*, 2021 WL 745418, at *3–4.  The KCA found that Petitioner's grievance was untimely under K.A.R. 44-15-101b.  *Id.*

"When a state court dismisses a federal claim on the basis of noncompliance with adequate and independent state procedural rules, federal courts ordinarily consider such claims procedurally barred and refuse to consider them." *Banks v. Workman*, 692 F.3d 1133, 1144 (10th Cir. 2012) (citing *Clayton v. Gibson*, 199 F.3d 1162, 1170–71 (10th Cir. 1999)). Compliance with a state procedural rule will be excused "only if the petitioner can show good cause and

prejudice or establish that our refusal to consider the merits of the claim would result in a 'fundamental miscarriage of justice.'" *Id*. (citing *Clayton*, 199 F.3d at 1170–71).

"In order to bar federal review, a state procedural rule must be adequate to support the judgment and independent from federal law." *Id*. at 1145. "A state procedural rule is independent if it relies on state law, rather than federal law, as the basis for the decision." *Finlayson v. State*, 6 F.4th 1235, 1238 (10th Cir. 2021) (internal quotation marks omitted). "To qualify as an 'adequate' procedural ground, a state rule must be 'firmly established and regularly followed.'" *Walker v. Martin*, 562 U.S. 307, 316 (2011) (quoting *Beard v. Kindler*, 558 U.S. 53, 60-61 (2009)). The KCA found Petitioner's claim to be procedurally defaulted based on an independent and adequate state law ground. The KCA's decision was based on Petitioner's failure to comply with a firmly established and regularly followed state rule. *See, e.g., White v. Pryor*, 422 P.3d 688 (Table), 2018 WL 3486116, at *6 (Kan. Ct. App. 2018) ("Our court has required strict compliance with the exhaustion requirement.") (citing *Laubach v. Roberts*, 32 Kan. App. 2d 863, 868–70, 90 P.3d 961 (2004)).

Therefore, this Court cannot consider Petitioner's claims absent a showing of good cause and prejudice or a showing that the refusal to consider the merits of the claim would result in a fundamental miscarriage of justice. To demonstrate cause for the procedural default, a petitioner must show that some objective factor external to the defense impeded his ability to comply with the state's procedural rule. *See Coleman v. Thompson*, 501 U.S. 722, 753 (1991) (citation omitted), *modified on other grounds by Martinez v. Davis*, 566 U.S. 1 (2012). A petitioner also must show "actual prejudice as a result of the alleged violation of federal law." *Coleman*, 501 U.S. at 750.

Petitioner has failed to show good cause or prejudice.   Although the KCA held that Petitioner was aware of the issue by 2014, Petitioner claims he did not discover the issue until October 5, 2017.   Petitioner argues that his July 27, 2018 grievance was timely because he filed it within one year of his discovery on October 5, 2017, as required by K.A.R. 44-15-101b. (Doc. 17–1, at 2; *see* Doc. 27, at 11 ("It was not until in the month of October 2017 when Mr. Love had gathered in all court documents and legally investigated to discover the 'sad truth.'")). Petitioner argues that he filed his grievance on July 27, 2018, which is less than a year after discovery.   (Doc. 27, at 12.)   However, the regulation provides that: "Grievances shall be filed within 15 days from the date of the discovery of the event giving rise to the grievance, excluding Saturdays, Sundays and holidays.   No grievance, regardless of the time of discovery, shall be filed later than one year after the event."   K.A.R. § 44-15-101b.

Petitioner's argument that he had one year after discovery to file his grievance was rejected in *Van Houten v. Marlett*.  *See Van Houten v. Marlett*, 330 F. App'x 161, 163 (10th Cir. 2009) (unpublished).   The Tenth Circuit held that "Van Houten's argument that the same regulation gives him one year to file his grievance is based on a mis-reading of Section 44-15-101b."  *Id*. 163.  The Tenth Circuit stated that:

> Under the regulation, all grievances must be filed within 15 days of discovering the event. In the rare case where an event is not discovered for more than a year after it occurred, the filing of a grievance is time-barred, even if it is filed within 15 days of discovering the event. Thus, the sentence permitting filing up to "one year after the event" is an additional limit on the filing time, not an extension.

*Id*.

A procedural default also may be excused if a petitioner can show that the failure to consider the defaulted claim would result in a fundamental miscarriage of justice. To proceed

under this exception, a petitioner "must make a colorable showing of factual innocence." *Beavers v. Saffle*, 216 F.3d 918, 923 (10th Cir. 2000). This exception to the general rule barring consideration of defaulted claims "is a markedly narrow one, implicated only in 'extraordinary case[s] where a constitutional violation has probably resulted in the conviction of one who is actually innocent.'" *Magar v. Parker*, 490 F.3d 816, 820 (10th Cir. 2007) (citation omitted). A petitioner seeking relief under a defaulted claim and asserting a claim of innocence must show that "in light of new evidence, 'it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt.' " *House v. Bell*, 547 U.S. 518, 536-37 (2006) (quoting *Schlup v. Delo*, 513 U.S. 298, 327 (1995)). Petitioner has not made such a showing.

The KCA found that Petitioner's claims were procedurally defaulted. "A federal habeas court does not have license to question a state court's finding of procedural default or to question whether the state court properly applied its own law." *Finlayson v. State*, 6 F.4th 1235, 1240 n.6 (10th Cir. 2021) (citation omitted); *see also Prater v. Blood*, Case No. 22-4024, 2022 WL 17491939, at *3 (10th Cir. Dec. 8, 2022) (unpublished) ("When a state court dismisses a claim on state-procedural-law grounds, federal courts do not evaluate the correctness of the state court's procedural ruling.") (citations omitted).

### 2. Merits

Even if Petitioner could show cause and prejudice to overcome the procedural default, he has failed to show that he is in custody in violation of the Constitution or laws or treaties of the United States. Petitioner argues that he was granted parole on his life sentence in 2005 pursuant to the Kansas Parole Board's ("KPB") July 19, 2005 final action notice. He claims that once he served his 25 years, the previously-granted parole was "activated" and he should have been

released on August 28, 2022.  *See* Doc. 12, at 3–4; Doc. 27, at 1.  Petitioner alleges that instead, he was passed for three years at his October 19, 2022 parole hearing.  (Doc. 12, at 3.)

A July 25, 2005 letter from the Sentence Computation Unit explained to Petitioner that he was serving a prior sentence of 8–15 years on Case No. 90-CR-1488 when he committed the crimes in Case No. 97-CR-878.  (Doc. 17–1, at 32.)  The letter explains that the KPB was required to parole Petitioner to his new sentences and they modified the decision to reflect "parole revoked, parole to determinate sentence," and the modified decision was issued on July 19, 2005.  *Id*.

Petitioner also argues that the KPB (or PRB) illegally paroled him from his indeterminate sentence of life over to the determinate sentence of 68 years.  (Doc. 17–1, at 3; Doc. 27, at 15–16.)  Petitioner claims that his life sentence with its parole eligibility date was illegally taken away from him when his 68-year sentence became the controlling sentence.  (Doc. 12–1, at 5.)  Petitioner alleges that this violated due process, constituted double jeopardy, and that the KDOC committed libel when it listed the 68-year sentence as controlling on the KDOC's website.  (Doc. 27, at 2.)  Petitioner also argues that the KDOC, the PRB, and the Kansas Courts violated their own rules, statutes, and regulations.  *Id*.

The KCA observed, in dicta, that:

> The obvious flaw in Love's basic contention is that parole at the end of 25 years of prison service on his life sentence, or indeed at any time during Love's lifetime, is entirely discretionary with the Kansas Prisoner Review Board (the paroling authority) and might never be granted. See K.S.A. 2019 Supp. 22-3717(g). And, even if Love was paroled on his life sentence, he would not be released until he had served a total of 816 months (68 years) on his other concurrent sentence with a possible reduction of time through earning good time credits. See K.S.A. 2019 Supp. 21-6821. Likewise, if Love were somehow to complete serving his 816-month sentence, but had never been granted discretionary parole on his life sentence, he still could not leave prison. So, whatever

> KDOC lists as Love's controlling sentence appears, on its face, to
> be of academic interest only and not based on the clear
> requirements of Kansas sentencing law.

*Love v. Schnurr*, 2021 WL 745418, at *2. *See also State v. Mebane*, 278 Kan. 131, 137–38, 91 P.3d 1175 (2004) (noting that defendant's argument that his life sentences, with the possibility of parole after 15 years, were controlling would unreasonably and illogically result in ignoring his concurrent 45-year minimum terms); *see also* K.A.R. § 44-6-101(b)(4) (defining a controlling sentence as "the sentence made up of the controlling minimum term and the controlling maximum term of any sentence or composite sentence or the sentencing guidelines sentence made up of two or more sentences, whether concurrent or consecutive, that results in the longest prison term"). Petitioner's argument that the KDOC listed his life sentence as controlling on various paperwork, and then switched it to reflect that his 816-month sentence was controlling, does not show that his sentence is being improperly calculated.

"[A]s the Kansas Supreme court and panels of [the Tenth Circuit Court of Appeals] have held, the Kansas parole statute does not create a liberty interest as would be required to maintain a due-process claim." *Heath v. Norwood*, 772 F. App'x 706, 708 (10th Cir. 2019) (unpublished) (citing *See, e.g.*, *Johnson v. Kan. Parole Bd.*, 419 F. App'x 867, 871 (10th Cir. 2011) (unpublished); *Gilmore v. Kan. Parole Bd.*, 243 Kan. 173, 756 P.2d 410, 415 (1988)); *see also Swarthout v. Cooke*, 562 U.S. 216, 220 (2011) ("There is no right under the Federal Constitution to be conditionally released before the expiration of a valid sentence, and the States are under no duty to offer parole to their prisoners.") (citation omitted).

Petitioner's argument that the KDOC, the KPB, and the state courts failed to follow their own rules, statutes, and regulations, does not show that he is in custody in violation of the Constitution or laws or treaties of the United States. "[F]ederal habeas corpus relief does not lie

for errors of state law." *Wilson v. Corcoran*, 562 U.S. 1, 5 (2010) (citing *Estelle v. McGuire*, 502 U.S. 62, 67 (1991) (quoting *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990)).

Petitioner also argues that his good time credits are not being administered properly. As support, he cites K.S.A. § 22-3717(b), which states that "an inmate sentenced to imprisonment for the crime of : (A) Capitol murder committed on or after July 1, 1994, shall be eligible for parole after serving 25 years of confinement, *without deduction of any good time credits* . . .." K.S.A. § 22-3717(b)(2) (emphasis added). Petitioner claims that the KDOC "started taking good time credits against its own Statute of K.S.A. 22-3717(b)(2)[,] [w]hich did not reduce or modify anything; it made Mr. Love's 'concurrent' sentence in 97CR878 harsher by making Mr. Love's sentences 'consecutive'." (Doc. 27, at 2.)

Petitioner's grievance regarding his good time credits suggests that he was under the impression that the KDOC was taking away good time credits for disciplinary infractions in violation of the statute. However, the phrase "without deduction of any good time credits" means that Petitioner must serve 25 years, without credit for good time. *See, e.g., State v. Nguyen*, 304 Kan. 420, 425 (2016) (addressing K.S.A. 21-6620(b)(1) dealing with felony murder and finding that the statute provides that the 25 years' imprisonment shall not be reduced by the application of good time credits). The response to his grievance explained this to Petitioner by indicating that his 816-month sentence was earning good time credit while his hard 25 sentence does not earn good time credit, and that each sentence was tracked separately for good time credits. (Doc. 1–1, at 76.) Petitioner has not made any arguments regarding his disciplinary infractions or the disciplinary proceedings that resulted in the loss of good time credits.

Petitioner has failed to demonstrate cause and actual prejudice excusing his procedural default. The Court also finds that even if Petitioner's claims are considered on the merits, he

fails to allege facts establishing that he is in custody in violation of the Constitution or laws or treaties of the United States.  Therefore, the Court must deny the Petition.  Although the Court sympathizes with Petitioner's confusion over the KDOC's paperwork regarding his controlling sentence, the dispositive issue is whether Petitioner has demonstrated that "[h]e is in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2241(c)(3). Petitioner has failed to make such a showing.  *See Gayton v. Romero*, 503 F. App'x 562, 564 (10th Cir. 2012) (unpublished) (petitioner failed to meet his burden of proof regarding sentence calculation);  *see also Espinoza v. Sabol,* 558 F.3d 83, 89 (1st Cir. 2009) ("[T]he burden of proof under § 2241 is on the prisoner.") (citations omitted); *Odell v. Hudspeth*, 189 F.2d 300, 302 (10th Cir. 1951) (the burden of proof was upon the petitioner); *Wilson v. Keffer*, Civil Action No. 08–1961, 2009 WL 1230020, at *4 (W.D. La. May 5, 2009) ("In order to state a claim for relief pursuant to 28 U.S.C. § 2241, a *habeas corpus* petitioner must allege and ultimately establish that he is in custody in violation of the Constitution and laws of the United States; and, the habeas petitioner has the burden of proof with regard to his claims for relief.").

### 3.  Certificate of Appealability

Rule 11 of the Rules Governing Section 2254 Cases requires the Court to issue or deny a certificate of appealability ("COA") upon entering a final adverse order. The Tenth Circuit has held that this requirement also applies to petitions brought under 28 U.S.C. § 2241. *Montez v. McKinna*, 208 F.3d 862, 869 (10th Cir. 2000) (holding that the COA requirement applies "whenever a state prisoner habeas petition relates to matters flowing from a state court detention order").

"When the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, a COA should issue when the prisoner shows, at

least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). The failure to satisfy either prong requires the denial of a COA. *Id.* at 485. "Where a district court has rejected the constitutional claims on the merits, . . . [t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id.* at 484. The Court concludes that reasonable jurists would not find the Court's procedural ruling subject to debate and, even if they did, they would not find the Court's assessment of the constitutional claims debatable or wrong. Therefore, the Court declines to issue a certificate of appealability.

**IT IS THEREFORE ORDERED BY THE COURT** that Petitioner's Motion for Evidentiary Hearing (Doc. 28) is **denied.**

**IT IS FURTHER ORDERED** that this petition for writ of habeas corpus is **denied**.

**IT IS FURTHER ORDERED** that no certificate of appealability will issue.

**IT IS SO ORDERED**.

**Dated June 30, 2023, in Kansas City, Kansas.**

S/ John W. Lungstrum
**JOHN W. LUNGSTRUM**
**UNITED STATES DISTRICT JUDGE**